AM INTERNATIONAL, INC., Plaintiff,

v.

GRAPHIC MANAGEMENT ASSOCIATES, INC., Defendant.

No. 92 C 8246.

United States District Court, N.D. Illinois, E.D.

Aug. 10, 1993.

Opinion Denying Motion To Amend Complaint Oct. 29, 1993.

Michael T. Hannafan, William E. Blais, Michael T. Hannafan & Associates, Ltd., Chicago, IL, for plaintiff.

Thomas M. Crisham, Thomas F. Ging, Hinshaw & Culbertson, Chicago, IL, for defendant.

## MEMORANDUM OPINION AND ORDER

ALESIA, District Judge.

Before the court is Defendant's Motion for Judgment on the Pleadings as to

Count I of Plaintiff's Complaint. Rule 12(c) of the Federal Rules of Civil Procedure provides that "[a]fter the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings." A motion for judgment on the pleadings pursuant to this Rule is subject to the same standard as a Rule 12(b)(6) Motion to Dismiss. *See, e.g., United States v. Wood,* 925 F.2d 1580, 1581 (7th Cir.1991). Therefore, all well-pleaded material allegations of the opposing party's pleading are to be taken as true and the court must view all of the facts in a light most favorable to the nonmoving party.

■ Graphic Management Associates, Inc. ("GMA") argues that it is entitled to judgment on the pleadings because the undisputed facts and the License Agreement under which AM International, Inc. ("AMI") seeks relief (incorporated by reference in the complaint) show that defendant assumed no obligation to pay plaintiff the royalty fees which plaintiff seeks in Count I. "If the language of the contract unambiguously provides an answer to the question at hand, the inquiry is over." *Grubb & Ellis Co. v. Bradley Real Estate Trust,* 909 F.2d 1050, 1055 (7th Cir. 1990). The court agrees with the defendant that this is a case where we need go no further than the clear language of the agreement.

Paragraph 3.3 of the License Agreement provides in pertinent part that:

> GMA agrees to pay AM a continuing royalty of Two Hundred Thousand Dollars ($200,000) for each MIRS product shipped after the entry of the Consent Judgment Order and before the expiration of U.S. Patent No. 3,825,246.

The Consent Judgment Order was entered on December 27, 1988, and the patent expired on July 23, 1991. The products at issue, newspaper inserting machines with a Missed Insert Repair System ("MIRS machines"), were shipped between September 26, 1991 and November 14, 1991. Because the products were shipped after the expiration of the patent, the particular order of MIRS machines at issue is outside the scope of paragraph 3.3 of the License Agreement.

Paragraph 3.5 of the License Agreement, however, both elaborates on and provides an exception to paragraph 3.3:

> The continuing royalties set forth in paragraph 3.3 above shall accrue on the date of shipment of the product by GMA, except at [sic] beginning on January 1, 1991 and continuing to July 23, 1991 royalty shall accrue on the receipt by GMA of a bona fide purchase order for a product, provided that product is shipped prior to December 31, 1991.

The machines at issue were ordered in January of 1990, long before the time period to which paragraph 3.5 of the License Agreement applies.

Plaintiff argues that GMA's motion should be denied because the issue of whether the parties intended for GMA to pay royalties on the machines if ordered before January 1, 1991 and shipped between July 23, 1991 and December 31, 1991 is a contingency for which the parties did not explicitly provide in the License Agreement. Plaintiff contends that GMA's interpretation of the parties' intent is insupportable in the "real-world" context. *FDIC v. W.R. Grace & Co.,* 877 F.2d 614, 620 (7th Cir.1989) (A contract may appear to be "a perfectly lucid and apparently complete specimen of English prose," but "anyone familiar with the real-world context of the agreement would wonder what it meant with reference to the particular question that has arisen.") Plaintiff argues that paragraph 3.5 of the License Agreement is an inclusive provision which extended AMI's patent rights by including MIRS machines ordered during the life of the patent but shipped after the patent expired.

Further, plaintiff argues that GMA confuses the obligation to pay royalties with the accrual of the obligation. Plaintiff points out that paragraph 3.5 specified that royalties would accrue on the date of shipment except that beginning January 1, 1991, royalties would accrue on the receipt of a bona fide order, provided the product was shipped before December 31, 1991. Thus, plaintiff contends, the date of shipment was important to the accounting of royalties and had nothing to do with creating GMA's obligation to pay the royalties.

Plaintiff's contentions, however, are belied by the plain language of the License Agreement. Even if paragraph 3.5 is about accrual, paragraph 3.3 sets forth when GMA is obligated to make royalty payments. GMA agreed to pay royalty fees "for each MIRS product shipped after the entry of the Consent Judgment Order [December 27, 1988] and before the expiration of U.S. Patent No. 3,825,246 [July 23, 1991]." License Agreement, ¶ 3.3. Similarly paragraph 3.5 provides that the royalty referred to in paragraph 3.3 "shall accrue on the date of shipment of the Products by GMA...." No other provision in the License Agreement creates or discusses GMA's obligation to pay royalty fees for the MIRS machines. Thus, the date of shipment of MIRS machines was the sole triggering event for both the existence of the underlying royalty obligation and its accrual except as stated in paragraph 3.5.

The only exception to the general rule that GMA agrees to pay royalty fees upon shipment of MIRS machines is paragraph 3.5, which provides for the accrual of royalty obligations for orders received by GMA beginning January 1, 1991 and continuing to July 23, 1991, provided the product is shipped by GMA prior to December 31, 1991. Had the parties intended otherwise, they could have employed different language. For example, plaintiff could have employed the language suggested by its affiant, George H. Gerstman, by providing that paragraph 3.5 of the License Agreement "pertains to all machines that were 'on order' or 'orders which were in receipt' during the period January 1, 1991 to July 23, 1991, even if the order had been received before or after January 1." Affidavit, at 7. Rather, for reasons the court will not now second guess, the parties opted for language limiting the time during which bona fide offers would trigger an obligation to pay royalty fees to a period "beginning on January 1, 1991 and continuing to July 23, 1991."

The plaintiff argues that the parties did not provide for the contingency at issue in the License Agreement. The events that transpired, however, were not unpredictable, and the parties are not unsophisticated. By including a specific period during which bona fide offers would trigger the accrual of an obligation to pay royalty fees, the parties implicitly excluded orders received outside of that period. Furthermore, the License Agreement contains an integration clause at paragraph 9.3 which provides that the License Agreement "constitutes the entire understanding of the parties with respect to its subject matter...." If the parties intended a different result, they should have drafted the agreement more carefully. The court will not contravene the plain language of the License Agreement.

Whether a contract is ambiguous is a question of law for the court. *Old Republic Insurance Co. v. Federal Crop Insurance Corp.*, 947 F.2d 269, 274 (7th Cir.1991). Such ambiguity exists only if the language at issue is reasonably and fairly susceptible to more than a single meaning. *Sunstream Jet Express, Inc. v. International Air Service Co., Ltd.*, 734 F.2d 1258, 1269 (7th Cir.1984). Furthermore, "[a] contract is not ambiguous merely because it fails to address some contingency; the general presumption is that 'the rights of the parties are limited to the terms expressed' in the contract". *Consolidated Bearings Co. v. Ehret–Krohn Corp.*, 913 F.2d 1224, 1233 (7th Cir.1990) (citations omitted). There is also a strong presumption against rewriting a contract to add provisions that the parties could have easily included but did not. *Seko Air Freight, Inc. v. Transworld Systems, Inc.*, No. 90 C 6199, 1991 WL 206134, *3, 1991 U.S.Dist. LEXIS 13864, *8–*9 (N.D.Ill. October 1, 1991). Finally, "[u]nless a contract is ambiguous, its meaning must be determined from the words used; courts will not construe into the contract provisions that are not there simply because a more equitable result might be reached." *Knapp v. National Heritage, Inc.*, No. 91 C 20340, 1992 WL 70338, *2, 1992 U.S.Dist. LEXIS 4693, *5 (N.D.Ill. March 18, 1992).

Because the court agrees with the defendant that plaintiff's claims are belied by the unambiguous language of the License Agreement, the court grants defendant's motion for judgment on the pleadings pursuant to Rule 12(c).

## OPINION ON MOTION TO AMEND COMPLAINT

Before the court is plaintiff's motion for leave to file an amended complaint. For the reasons set forth below, the court denies plaintiff's motion.

On August 10, 1993, the court granted defendant's motion for judgment on the pleadings as to Count I of plaintiff's complaint pursuant to Federal Rule of Civil Procedure 12(c). In that count, plaintiff claimed that defendant owed it accrued royalties of $1 million under a license agreement between plaintiff and defendant.

■ According to that license agreement, defendant was obligated to pay plaintiff a royalty on each product—newspaper inserting machines with a Missed Insert System ("MIRS machines")—that defendant shipped after December 27, 1988, and before July 23, 1991. These royalties accrued on the date of shipment of the MIRS machine by defendant. However, the license agreement also contained an exception to this provision: beginning January 1, 1991, and continuing until July 23, 1991, royalties accrued upon defendant's receiving a bona fide purchase order for a MIRS machine, provided that the machine was shipped by December 31, 1991.

The MIRS machines at issue in plaintiff's complaint were ordered in January 1990 and shipped between September 26, 1991, and November 14, 1991. The court found the language of the license agreement unambiguous, and concluded that the January 1990 order of the MIRS machines was outside the scope of the license agreement. Accordingly, the court granted defendant's motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). On September 7, 1993, the court denied plaintiff's motion to reconsider and vacate that judgment. Plaintiff now asks for leave to amend its original complaint.

The substance of plaintiff's proposed amended complaint is that the January 1990 order of the MIRS machines was modified and confirmed on April 12, 1991, and that this constituted a new bona fide order of the modified machines. Were this true, the new order would be within the exception's "window." That is, the order would fall between January 1, 1991, and July 23, 1991, and the machines would have been shipped prior to December 31, 1991, thus triggering the accrual of royalties on those machines.

Plaintiff supports its new claim by pointing to a "Factory Order Addition/Deletion/Change Notice" ("factory order"), which plaintiff obtained from defendant during discovery. According to plaintiff, this factory order modified the original purchase agreement between defendant and the purchaser of the MIRS machines at issue. That purchase agreement was subject to the condition that defendant would test the machines to assure they would meet the purchaser's needs; if the testing was unsuccessful, then the purchaser would have no further obligations under the purchase agreement. Because the original order was subject to conditions and was modified and confirmed by the factory order, plaintiff argues that the factory order constituted a new bona fide order of the modified MIRS machines.

■ Leave to amend a party's pleading "shall be freely given when justice so requires." FED.R.CIV.P. 15(a). But Rule 15(a) "does not require courts to indulge in futile gestures." *Universal Mfg. Co. v. Douglas Press, Inc.*, 770 F.Supp. 434, 435 (N.D.Ill. 1991) (citing *Glick v. Koenig*, 766 F.2d 265, 268–69 (7th Cir.1985)). Thus, the court may deny leave to amend "if the proposed amendment could not withstand a motion to dismiss." *Id.*

■ A Rule 12(b)(6) motion to dismiss for failure to state a claim may be granted if it is beyond doubt that the plaintiff is unable to prove any set of facts that would entitle it to relief. *Conley v. Gibson*, 355 U.S. 41, 45, 78 S.Ct. 99, 102 (1957). The court must take all well-pleaded allegations as true, and must view them in the light most favorable to the plaintiff. *Ellsworth v. City of Racine*, 774 F.2d 182, 184 (7th Cir.1985), *cert. denied*, 475 U.S. 1047, 106 S.Ct. 1265 (1986). The court may not go beyond the face of the pleading, but the court may take into consideration any document incorporated by reference to the pleading. *United States v. Wood*, 925 F.2d 1580, 1581–82 (7th Cir.1991) (citing *Goldman*

*v. Belden,* 754 F.2d 1059, 1065–66 (2d Cir. 1985) (pleading is deemed to include any document attached as an exhibit)).

Plaintiff's proposed amended complaint would not withstand a motion to dismiss. Looking to the factory order and the license agreement, both of which are incorporated by reference to the pleadings, the court finds that the factory order cannot be considered a new bona fide purchase order. The license agreement explicitly states that royalties accrue upon "the *receipt by GMA* of a bona fide purchase order for a product." *See* Plaintiff's Proposed Amended Complaint, at 3 & ex. A (emphasis added). Given this language in the license agreement, as well as the apparent nature of the factory order as an internal memorandum prepared by defendant for its own use, the court cannot conclude that the factory order constitutes a bona fide purchase order.

As with plaintiff's original complaint, the claim made in Count I of plaintiff's proposed amended complaint is belied by the unambiguous words of the license agreement, as well as by the obvious nature of the factory order. *Grubb & Ellis Co. v. Bradley Real Estate Trust,* 909 F.2d 1050, 1055 (7th Cir.1990). Accordingly, the court denies plaintiff's motion for leave to amend its complaint pursuant to Rule 15(a).